# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1113 | **DATE** | 7/6/2004 |
| **CASE TITLE** | Thornbrook International vs. Rivercross Foundations | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment (89-1) and defendant Roberts' motion for summary judgment are both granted in part and denied in part. Summary judgment is granted in favor of plaintiff and against defendant Rivercross as to liability on Counts 1 and 3 of the complaint, and for partial damages of $2,985.000 against Rivercross on those claims. Roberts' motion for summary judgment is granted in part with regard to plaintiff's requests for damages as detailed in this Opinion. Thornbrook's motion to strike is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JUL 0 8 200 | |
| | Notified counsel by telephone. | | date docketed | 136 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

CLERK U.S. DISTRICT COURT

2004 JUL -7 PM 5: 23

-ED-03

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

JUL 0 8 2004

| | | |
|---|---|---|
| THORNBROOK INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03 C 1113 |
| | ) | |
| RIVERCROSS FOUNDATION; DAVID P. | ) | |
| MAHANY; WALTER MASLOWSKI; and | ) | |
| MARJORIE RAWLS ROBERTS, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In August 2001, plaintiff Thornbrook International, Inc., a Canadian corporation, entered into a trust agreement with defendant Rivercross Foundation, a Nevada corporation headquartered in Winnetka, Illinois, by which it deposited $5 million with Rivercross. The funds were to be held in trust, invested only in specified types of safe instruments "on a non-depletion basis," kept free and clear of liens and encumbrances, and returned on demand. Between July and September 2002, Thornbrook asked for the return of various sums, and by October 5, 2002 it had revoked the trust in its entirety. But as of January 2003, only $1,000,000 of the trust *res* had been returned. According to Thornbrook, Rivercross and its principals Walter Maslowski and David Mahany gave phony justifications for their failure to return the funds.

Thornbrook was fleeced, though it remains to be determined who was wielding the shears. It filed suit in February 2003, claiming that Rivercross had breached the trust agreement as well as its fiduciary duty, had converted Thornbrook's property, and had committed fraud, and

that Mahany and Maslowski had assisted in these defalcations. Thornbrook also sued Marjorie Rawls Roberts, P.C. ("Roberts"), a U.S. Virgin Islands-based attorney who had signed an agreement to act as "trust protector," for breach of contract.

Shortly after filing suit, Rivercross, Mahany and Maslowski entered into an agreed preliminary injunction order. In the order, they represented that the trust property was being held at banking institutions. The order barred them from encumbering or using the trust property and also from transferring it, except to a particular Bank of Montreal account for the purpose of returning the property to Thornbrook. *See* Order of March 3, 2003.

When Thornbrook did not get its money back following entry of the agreed preliminary injunction order, it moved to hold the defendants in contempt. In support of the motion, Thornbrook stated it had learned the funds were being held in an account at Credit Suisse Privatebank under the name Geryline Participation Corporation and were "blocked" from withdrawal; Rivercross was claiming it had transferred control over the funds to an unaffiliated individual; and the defendants had not told that individual, Geryline, or Credit Suisse of the preliminary injunction and had failed to provide Thornbrook any bank statements for the Credit Suisse account. After holding an evidentiary hearing, the Court declined to hold the defendants in contempt because the "block" had predated the injunction, and there was no indication that the defendants had done anything following entry of the injunction to further encumber the *res*.

The Court thereafter modified the preliminary injunction to require the defendants to pay the remaining amount then due, $3,485,000,[1] into the Court's registry. Defendants failed to do

---

[1] In early March 2003, after suit was filed, another $500,000 had been repaid to Thornbrook, with "substitute funds" obtained by Rivercross.

so, and the Court later entered a finding of contempt against Rivercross, Mahany and Maslowski and imposed a daily-increasing fine to attempt to coerce compliance. The fine likewise has not been paid. And the so-called "block" on the funds, which defendant Maslowski had testified was to expire in December 2003, *See* Aug. 15, 2003 Tr. at 51-52, evidently still exists, as defendants claim to be unable to access the trust property. The somewhat shadowy characters with whom Maslowski and Mahany claim to have dealt evidently continue to put them off, and the defendants claim they are unable to comply with the Court's order to deposit the remaining amount of the trust *res*.

The case has generated three summary judgment motions, two of which the Court deals with in this ruling. Thornbrook has moved for summary judgment as to liability on its claims against Rivercross, Mahany and Maslowski for breach of contract and breach of fiduciary duty, and on its claim against Roberts for breach of her contractual obligations as trust protector. Roberts has moved for summary judgment on the breach of contract claim against her. Both of these motions are ripe for ruling. Rivercross, Mahany and Maslowski have separately moved for summary judgment as to various aspects of the damages claimed by Thornbrook. That motion is still being briefed and will be ruled on at a later date.

### Discussion

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.     Facts

Thornbrook entered into a Revocable Grantor Trust agreement with Rivercross on August

17, 2001, naming Thornbrook as the settlor and sole beneficiary of the trust, and Rivercross as

the trustee.  The trust agreement required Rivercross to act in a fiduciary capacity vis-a-vis the

trust property and obligated it to safeguard the property and keep Thornbrook aware of any

material changes that might occur.  Thornbrook LR 56.1 Submission ("Thornbrook Facts"), Ex. 5

(Trust Agr.) ¶ 1.  The agreement required Rivercross to maintain the property in demand deposit

or custodial accounts at banks or financial institutions rated A or better by Standard & Poor's or

Moody's, keep the trust assets free and clear of liens, claims, and encumbrances of any kind, and

hold the assets in cash or certain specified types of cash equivalents.  *Id.* ¶ 4.  Rivercross agreed

to hold the trust property "in safe keeping ... on a 'non-depletion' basis" and to hold interest or

investment income for disbursement to Thornbrook.  *Id.* ¶ 4.10.  The trust agreement also

provided as follows:

> **Return of Trust Res (Principal).**  Upon expiration of this Contract, as defined
> herein, or upon demand of the Settlor in accordance with the terms of this trust,
> the Trustee shall return 100% of the Trust Res (Principal) to the Settlor as sole
> Beneficiary.

*Id.* ¶ 4.18.  The agreement was made revocable by Thornbrook upon 30 days written notice once

90 days had passed from the agreement's execution.  *Id.* ¶ 7.5.

Paragraph 5 of the trust agreement was entitled "Trust Protector."  It provided for the

trustee, with the approval of the beneficiary, to appoint a licensed attorney "with the requisite

knowledge and experience to advise on matters of trust and tax law."  *Id.* ¶¶ 5.1, 5.2.  The trust

protector's duties were described as follows:

4

A.      Ensure Trustee complies with trust provisions and answer, on behalf of
        Settlor and Beneficiaries, all Trustee's questions regarding the
        interpretation or execution of this Contract;

B.      Oversee the appointment of a successor trustee under provision 4.17 above;

C.      By appraised [sic] of any changes in the laws which might effect [sic] the
        status or integrity of the Trust as an independent entity, the tax
        consequences of disbursements, the consequences which result from an
        increase to the corpus due to investments, and any such other factors
        affecting the administration of the Trust or its corpus;

D.      Serve as mediator between Trustee and the Beneficiaries for any
        grievances, misunderstandings, or any alleged abuse of the Trust estate by
        Trustee. At any time when disputes among the Trust Protector, Trustee
        and the Beneficiaries remain unresolved for a period of thirty (30) calendar
        days, the Trust Protector may appoint as arbitrator an independent legal
        counsel expert in trust law, and whose decision shall be final and binding.

*Id.* ¶ 5.4. The agreement provided for the trust protector to be compensated for its services. *Id.*

¶ 5.5. Attached to the trust agreement was a signed "Trust Protector Contract" between

Rivercross and Roberts under which Roberts agreed, among other things, "to use the best of [her]

knowledge and abilities to protect the integrity of the trust document and the relationships

established thereunder" and to use her best efforts "to advise on matters of counsel" at the rate of

$250 per hour. *Id., Ex. B2.*

On April 24, 2001, after Roberts was first approached by Mahany about serving as a

"trust protector" for Rivercross,[2] she sent Mahany a letter expressing her understanding that her

duties "as Trust Protector, as per the Trust Protector Contract signed by me on April 9, 2001 and

all future Trust Protector contracts, will be limited to rendering legal research or advice, advising

on matters of counsel, and keeping and maintaining a specialized database or information on the

---

[2] Rivercross evidently entered into other trust protector contracts with Roberts before the
Thornbrook agreement.

subject of Trusts." Thornbrook Facts, Ex. 27 (letter of April 24, 2001). The letter also stated that "[p]ursuant to trust provision 5.4(A), to ensure the trustees' compliance with the terms of the trust [Rivercross] and the Trust Protector will utilize the following process," including advance submission to Roberts of investment contract summaries and contact information for principals of the trust, submission of executed copies of investment contracts and quarterly reports identifying assets held in trust and trust bank accounts, and permission to the trust protector to request an audit at any time. *Id.* Finally, the letter stated that the trust protector "will have no responsibility for any investment contracts or bank accounts executed or maintained by [Rivercross] that have not been disclosed to the Trust Protector." *Id.* (emphasis in original).

Neither the April 24, 2001 letter nor its terms were referenced in Thornbrook's trust agreement or in Roberts' trust protector contract regarding the Thornbrook trust, and Thornbrook was unaware of the letter's terms or Roberts' purported understanding of her obligations. Thornbrook Facts ¶ 94; Roberts LR 56.1 Response ("Roberts Resp.") ¶ 94. The parties dispute whether the letter limits Roberts' responsibilities under the trust protector contract and trust agreement ¶ 5.4(a).

About a month after the trust agreement was executed, Rivercross and Thornbrook executed a "Letter of Understanding." Thornbrook Facts, Ex. 8. Roberts was not a party to this agreement. The letter of understanding expressed the parties' intent to hold the trust property at LGT Bank in Liechtenstein, in a particular account held by "Private Fiduciary Trust Reg." *Id.,* p. 1. Maslowski was to be the "principal" for the account, and he and Laura Turner (a Thornbrook representative) were identified as co-signers. *Id.* The letter identified the "conditions" of the account as follows: "blocked and free of liens claims or encumbrances." *Id.* If the Court

correctly understands the second page of the letter of understanding, it appears to contemplate an "intended best efforts" yield of 100% over a one month period, though it does not explain how such a miraculous return might be attained, other than to identify a "facility" (an investment vehicle?) called "RVC SPV 30/100."[3] *Id.* As compensation, Rivercross would receive 5% of the yield, with 10% going to the unnamed "funds manager" and the rest to Thornbrook. *Id.*, p. 2. The letter of understanding stated that "[i]n the event that the funds manager should not realize the intended best efforts yield then the asset shall be withdrawn on or before the above stated settlement date [October 30, 2001] and returned in full" to the trust. *Id.*, p. 2. The letter stated that no amendments would be effective unless and until executed by both Thornbrook and Rivercross. *Id.*

The funds were not returned to Thornbrook at the end of October 2001 as contemplated by the letter of understanding. Rivercross was not responsive to Thornbrook's inquiries, and in February 2002 Thornbrook started to tape record its representatives' conversations with Rivercross. Roberts LR 56.1 Submission ("Roberts Facts") ¶ 55; Thornbrook LR 56.1 Response ("Thornbrook Resp.") ¶ 55. In March 2002, Thornbrook was told its funds had been "blocked" for a one year period starting in February 2002. Roberts Facts ¶ 56; Thornbrook Resp. ¶ 56.

At some point after September 2001 – evidently in January or February 2002 – Maslowski moved the trust funds from LGT Bank to an account at Privatebank IHAG Zurich held in the name of Geryline Participation Corp.,[4] and later to an account held by Geryline at

---

[3] "RVC" is an abbreviation for Rivercross.

[4] Geryline is claimed by Mahany and Maslowski to be a British Virgin Islands entity that is majority-owned by Rivercross.

Credit Suisse Private Bank. Thornbrook Facts ¶ 43 & cited references; Rivercross, et al. LR 56.1 Response ("Rivercross Resp.") ¶ 43. Rivercross did not obtain Thornbrook's consent to move the funds and did not advise Thornbrook of the transfer. Thornbrook Facts ¶ 45; Rivercross Resp. ¶ 45.

Thornbrook sent Rivercross written notifications of partial revocations of the trust as follows:

| Date sent | Date effective | Amount |
|-----------|----------------|--------|
| 7/23/02 | 8/22/02 | $250,000 |
| 8/23/02 | 9/22/02 | $550,000 |
| 9/3/02 | 10/3/02 | $2,150,000 |
| 9/5/02 | 10/5/02 | $2,050,000 |

Thornbrook Facts ¶¶ 28-31; Rivercross Resp. ¶¶ 28-31. The parties agree that as of October 5, 2002, the trust agreement was revoked by Thornbrook in its entirety and that pursuant to these revocations, Rivercross was required to return 100% of the trust principal of $5,000,000 to Thornbrook. Thornbrook Facts ¶¶ 32-33; Rivercross Resp. ¶¶ 32-33. It did not do so. By the end of January 2003, Rivercross had returned only about $1,000,000, Thornbrook Facts ¶ 34; Rivercross Resp. ¶ 34, and Thornbrook filed suit in mid-February 2003. The following is a list of the payments that Rivercross has made, the last two of which came after the lawsuit was filed:

| Date of payment | Amount |
|-----------------|--------|
| 7/25/02 | $250,000 |
| 7/30/02 | $50,000 |
| 10/1/02 | $100,000 |

| 1/16/03 | $115,000 |
| 1/24/03 | $500,000 |
| 3/4/03 | $500,000 (post-lawsuit) |
| 11/21/03 | $500,000 (post-lawsuit) |

Thornbrook Facts ¶ 34; Rivercross Resp. ¶ 34. The total of these payments is $2,015,000.

Thornbrook and Rivercross dispute whether $15,000 of the January 16, 2003 payment represents return of principal or repayment for expenses Thornbrook incurred in settling a lawsuit brought by a joint venture partner. Thornbrook Facts ¶ 35; Rivercross Resp. ¶ 35. Rivercross concedes it owes Thornbrook $2,985,000. Rivercross Summ. Judg. Resp. at 5, 11.

Rivercross, Mahany and Maslowski admit that Rivercross "turned over direct control over the trust *res* to third parties," namely "Private Fiduciary Trust Reg." and "DKZ Forex, AG," whose agents were Rudolf Keller and Arthur Vogt. Thornbrook Facts ¶ 56; Rivercross Resp. ¶ 56. Rivercross disputes the contention that it no longer controls the trust property; it contends that Keller and Vogt are effectively agents of Thornbrook. Thornbrook Facts ¶ 57; Rivercross Resp. ¶ 57. But it is undisputed that the Credit Suisse account is held not in Thornbrook's or Rivercross's name, but rather in Geryline's name, Thornbrook Facts ¶ 58; Rivercross Resp. ¶ 58; that the documentation reflecting ownership of the account is held by Vogt, Thornbrook Facts ¶ 59; Rivercross Resp. ¶ 59; and that Geryline is unable to draw on the funds due to a "block" that was placed *after* Thornbrook had revoked the trust. Thornbrook Facts ¶¶ 61-62; Rivercross Resp. ¶¶ 61-62. The balance in the Credit Suisse account decreased by at least $2 million in the latter part of 2002, and neither Maslowski nor Mahany have any idea what happened to that money. Thornbrook Facts ¶¶ 64, 66, 67; Rivercross Resp. ¶¶ 64, 66, 67. They have no direct

access to the account or information about it but rather are entirely reliant upon the *bona fides* of Keller and Vogt and the accuracy of whatever information they convey. Thornbrook Facts ¶¶ 68-70; Rivercross Resp. ¶¶ 68-70. The amount remaining due to Thornbrook has not been returned, despite the fact that Rivercross, Mahany and Maslowski each are subject to daily-increasing civil fines based on their non-compliance with the Court's order to return the funds. Thornbrook Facts ¶ 72; Rivercross Resp. ¶72.

Roberts received a quarterly report from Rivercross for the third quarter of 2001 stating that the funds of the Thornbrook trust were being held at LGT Bank. Thornbrook Facts ¶¶ 104, 106; Roberts Resp. ¶ 106. It does not appear, however, that Roberts was given a summary of the letter of understanding as contemplated by her April 24, 2001 letter, and there is no indication that she asked for one once she learned that the funds were at LGT Bank. Roberts did not receive quarterly reports for any subsequent quarters and evidently did not insist that they be provided by Rivercross, instead relying on Mahany's oral representations that no material changes had occurred. Thornbrook Facts ¶¶ 105, 107, 109, 111, 112; Roberts Resp. ¶¶ 105, 107, 109, 111, 112. Roberts did not advise Thornbrook that she was not receiving quarterly reports. Thornbrook Facts ¶ 113; Roberts Resp. ¶ 113.

Roberts became aware of the transfer of the funds to Credit Suisse in or around October 2002 and advised Maslowski and Mahany that moving the funds without Thornbrook's consent was a violation of the trust agreement. Thornbrook Facts ¶¶ 47, 119-20 & Ex. 29; Roberts Resp. ¶¶ 47, 119-20; Rivercross Resp. ¶ 47, 119-20. She took no other steps vis-a-vis Rivercross and did not advise Thornbrook that a violation had taken place. Thornbrook Facts ¶¶ 115, 122, 124, 127-29; Roberts Resp. 115, 122, 124, 127-29. She likewise did not request an audit, even after

learning that Thornbrook's money was part of an account that was "blocked." *Id.*

Thornbrook did not contact Roberts to seek her assistance as "trust protector" until late September 2002; it says it was concerned that direct contact with Roberts might constitute a breach of the trust agreement. Roberts Facts ¶¶ 53-54, 68; Thornbrook Resp. ¶¶ 53-54, 68. In late September 2002, Thornbrook advised Roberts of Rivercross' failure to return the trust property. Roberts Facts ¶ 77; Thornbrook Resp. ¶ 77. Roberts inquired of Mahany, who replied that investments had not performed up to the parties' earlier expectations and that Rivercross was seeking "replacement funds" to return to Thornbrook. Roberts Facts ¶ 78; Thornbrook Resp. ¶ 78. Thornbrook asked Roberts to find out where the trust property was being held, and Roberts obtained this information from Mahany, but he told her the information was privileged and could not be disclosed to Thornbrook. Roberts Facts ¶¶ 80-83; Thornbrook Resp. ¶¶ 80-83. Roberts considered seeking advice to determine if she could disclose the information to Thornbrook, but Thornbrook asked her not to do so, concerned about incurring expenses for which it might be responsible, and believing it would get its money back soon. Roberts Facts ¶¶ 85-86; Thornbrook Resp. ¶¶ 85-86. In December 2002, Thornbrook terminated Roberts as trust protector. Roberts Facts ¶87; Thornbrook Resp. ¶ 87.

Thornbrook's complaint includes claims against Rivercross, Mahany and Maslowski for breach of the trust agreement (Count 1), conversion (Count 2), breach of fiduciary duty (Count 3), fraud (Count 4), civil conspiracy (Count 5), and to impose a constructive trust (Count 7), against Roberts for breach of contract (Count 6), and against all the defendants for an accounting (Count 8).

11

**B.     Thornbrook's summary judgment motion as to Rivercross, Mahany & Maslowski**

In its summary judgment motion, Thornbrook seeks to hold Rivercross, Mahany and Maslowski liable for breach of contract and breach of fiduciary duty; its conversion, fraud and conspiracy claims against those defendants are not part of the summary judgment motion.

### 1.     Breach of contract claim

Based on the undisputed facts, Rivercross breached its obligations under the trust agreement and the letter of understanding by failing to return the trust *res* upon revocation and by moving the *res* without authorization from Thornbrook.

It is undisputed that Rivercross failed to return the full amount of the trust principal following Thornbrook's revocation of the trust effective October 5, 2002. It is true, as Rivercross notes, that the trust agreement's provision requiring return of the trust principal upon Thornbrook's demand did not provide a specific time period in which this must be accomplished. *See* Thornbrook Facts, Ex. 5, ¶ 4.18. But when a time period for performance is omitted in a contract, the law implies a requirement of performance within a reasonable time. *See, e.g., Meyer v. Marilyn Miglin, Inc.,* 273 Ill. App. 3d 882, 890, 652 N.E.2d 1233, 1238 (1995). Rivercross objects that Thornbrook has not attempted to establish exactly what a "reasonable time" would have been for Rivercross to comply with Thornbrook's demand. The Court agrees with Thornbrook, however, that no reasonable jury could find that a period of over twenty months is reasonable.

It is likewise undisputed that Rivercross allowed the trust *res* to be moved from LGT Bank – where the letter of understanding required it to be maintained – to an account at Credit Suisse Private Bank held not by Rivercross but by Geryline, and that it did so without obtaining

12

Thornbrook's approval and indeed without its knowledge. *See* Thornbrook Facts ¶¶ 39-40, 43-. 46; Rivercross Facts ¶¶ 39, 40 (first sentence), 43-46. The placement of the funds into an account other than the "Trustee's Principal account" plainly violated ¶ 4.10(A) of the trust agreement; no reasonable jury could find otherwise. In addition, it cannot seriously be maintained that an account held by an entity other than the trustee (Rivercross) is the "Trustee's Principal account."

Rivercross's movement of the funds out of the account at LGT Bank in which the parties had agreed in writing to hold the funds to another account, without obtaining Thornbrook's approval, was likewise a clear breach of the letter of understanding; again, no reasonable jury could find otherwise. Rivercross says its actions were consistent with various provisions of the trust agreement permitting it to take steps necessary to carry out its role as trustee. These general provisions do not authorize what Rivercross did, as the letter of understanding imposed specific requirements regarding where the trust property was to be held and barred modification without Thornbrook's written consent. The same is true of Rivercross's contention that the movement of the funds was not "material" and thus that Thornbrook's approval or knowledge was not required. The letter of understanding's requirement of mutual written consent was not confined to material changes; it applied to all changes. And even if materiality were required, no reasonable jury could find that transfer of the trust's property from an account under Rivercross's control with a Thornbrook representative as a co-signer, to an account over which it has been proved beyond a shadow of a doubt Rivercross has no control at all, was anything other than a material change.

For these reasons, Thornbrook is entitled to summary judgment against Rivercross as to

liability on Count 1, its breach of contract claim. Rivercross concedes that judgment should be entered against it in the amount of $2,985,000, though it disputes Thornbrook's request for imposition of consequential damages and has moved separately for summary judgment as to that request. Because the breach of contract claim is a single claim, the Court will defer entry of judgment for now, at least until we have ruled on Rivercross's motion for summary judgment.

The Court agrees with Mahany and Maslowski, however, that Thornbrook has provided no basis to impose on them by way of summary judgment individual liability for Thornbrook's breach of contract. Mahany and Maslowski were not individual parties to the contract; they signed in a representative capacity. Under Illinois law, they are not individually liable absent a showing sufficient to impose *alter ego* liability, which Thornbrook has not attempted to make in its motion. *See Alpert v. Bertsch,* 235 Ill. App. 3d 455, 460, 601 N.E.2d 1031, 1036 (1992); *see also, In re Rehabilitation of Centaur Ins. Co.,* 158 Ill. 2d 166, 173, 632 N.E.2d 1015, 1017-18 (1994).

### 2.    Breach of fiduciary duty claim

Thornbrook is likewise entitled to summary judgment against Rivercross on its claim for breach of fiduciary duty. Rivercross does not dispute that as a trustee of Thornbrook's property, it owed Thornbrook a fiduciary duty. When a trustee fails to administer a trust pursuant to the terms of the trust agreement, a breach of trust results subjecting the trustee to liability for damages as well as other remedies. *See Northwestern Mut. Life Ins. Co. v. Wiemer,* 96 Ill. App. 3d 549, 552, 421 N.E.2d 1002, 1004 (1981); *see also, White v. MacQueen,* 360 Ill. 236, 248, 195 N.E. 832, 837 (1935). The Court has already ruled that Thornbrook is entitled to summary judgment on its claim that Rivercross breached its obligations under the trust agreement.

Thornbrook also contends that Rivercross failed to protect and preserve the assets of the trust. It is undisputed that a trustee has a duty "to use care and diligence in protecting and investing trust property." *McCormick v. McCormick*, 118 Ill. App. 3d 455, 462, 455 N.E.2d 103, 110 (1983). A trustee must deal prudently with the trust property during the pendency of the trust and is obligated to safeguard the property from loss or injury. *See David v. Russo*, 119 Ill. App. 3d 290, 296, 456 N.E.2d 342, 346 (1983); *Szabo v. Parr (In re Hartzell's Will)*, 43 Ill. App. 2d 118, 134, 192 N.E.2d 697, 706 (1963). This includes the duty to retain custody of the trust property. *See Williams v. Anderson*, 288 Ill. App. 149, 5 N.E.2d 593, 595 (1937); Restatement (2d) of Trusts § 175 (1959 & Supp. 2004).

As noted earlier, it is undisputed that Rivercross, which agreed to keep the trust property in an account over which Maslowski and a Thornbrook representative would be co-signers, transferred the property to an account held by Geryline. Even though Rivercross claims to be a majority shareholder of Geryline, the undisputed evidence, recited earlier, establishes that Thornbrook has no control or authority over the account. As such, it relinquished control of the trust property and thereby failed to protect the property.

Rivercross says that Vogt and Keller, who purportedly control the Geryline account, are in effect Rivercross's agents and thus Rivercross still has control over the property. This argument does not pass the "straight face" test, and no reasonable jury could accept it. It has been established beyond any reasonable dispute that Rivercross has no control at all over the Geryline account. First, it has only whatever information that Vogt and Keller choose to provide – precious little information in the eighteen months since Thornbrook filed suit. Second, and more importantly, Rivercross has no control or access over the funds in the account. It is

15

completely at the mercy of Vogt and Keller in this regard, and those individuals have utterly ignored Rivercross's requests, following the Court's injunction, to return Thornbrook's funds. Indeed, their failure to return the funds has persisted for many months beyond the time the supposed "block" was to expire. Under the circumstances, no reasonable jury could find that Rivercross still has control over the trust *res*.

Rivercross suggests that the trust agreement's provision allowing it to hire agents at its discretion, *see* Thornbrook Facts, Ex. 5, ¶ 4.13, relieves it from liability in this regard. The Court does not agree. The undisputed facts in this case establish beyond question that Rivercross placed the trust assets beyond its control, and that Vogt and Keller, if they are "agents" at all, are agents in name only. Rivercross has put itself in a position where it is completely powerless to exercise control over the trust property or even to know what is happening to the property. This cannot be characterized as the mere retention of an agent.

For these reasons, Thornbrook is entitled to summary judgment as to liability on its breach of fiduciary duty claim against Rivercross.

Thornbrook has failed, however, to establish that it is entitled to summary judgment against Mahany and Maslowski on the breach of fiduciary duty claim. Mahany and Maslowski were not appointed trustees in an individual capacity. It is common for a trust instrument to designate a corporation or other entity to act as a trustee. Corporations, of course, can act only through individuals. But that does not mean that the individuals become personally liable for breach of trust or fiduciary duty when they err in their capacity as employees or officers of the trustee entity. Rather, the injured party must show that there is a basis to impose individual liability. As was the case on the breach of contract claim, Thornbrook has not shown that it is

16

entitled to summary judgment in this regard.

Whether or not Mahany and Maslowski are fiduciaries in their own right, a party that colludes with a fiduciary in committing a breach of duty or induces or participates in a breach, and benefits as a result, may be held directly liable to the injured party. *See, e.g., Kehoe v. Saltarelli,* 339 Ill. App. 3d 669, 677, 786 N.E.2d 605, 613 (2003); *Regnery v. Meyers,* 287 Ill. App. 3d 354, 364, 679 N.E.2d 74, 80 (1997). There is some evidence that Maslowski, at least, personally benefitted from the movement of the funds; in return for transferring the funds to Geryline's account, stock in Geryline was issued in Maslowski's individual name with a "bearer" certificate. *See* Thornbrook Facts ¶ 59; Rivercross Resp. ¶ 59. But there is no basis to enter summary judgment in Thornbrook's favor on this theory either; determination of the breach of fiduciary claim as to Mahany and Maslowski will have to await trial.

### 3.     Conclusion

For the reasons stated above, the Court grants Thornbrook's motion for summary judgment as to Rivercross's liability on Counts 1 and 3 but denies Thornbrook's motion for summary judgment as to the liability of Mahany and Maslowski on those claims.

## B.     Thornbrook's motion for summary judgment as to Roberts; Roberts' motion for summary judgment

### 1.     Roberts' summary judgment motion

Thornbrook's primary claim against Roberts is that she failed to "[e]nsure Trustee complies with trust provisions," as provided by ¶ 5.4(A) of the trust agreement, and that she failed to "protect the integrity of the trust document and the relationships established thereunder," as required by the trust protector contract. Roberts disputes this, saying that her

duties are limited to those set forth in her April 24, 2001 letter to Rivercross and that she lived up to her obligations as defined by that letter.

To assess the parties' summary judgment motions the Court must first determine, if possible, what Roberts' duties were; without making such a determination we obviously cannot assess whether she committed a breach. There are three basic issues. The first is whether Roberts' obligations derive only from the trust protector contract, or also from the trust agreement. The second is whether her obligations are limited by her April 24, 2001 letter to Rivercross. The third is whether Roberts has any responsibility for Rivercross's noncompliance with the letter of understanding that was executed about one month after the trust agreement.

Although Roberts was not a signatory to the trust agreement, there is contemporaneous evidence that she considered herself subject to its terms. This includes the April 24, 2001 letter itself, in which Roberts appears to acknowledge that ¶ 5.4 of the trust agreement applies to her. *See* Thornbrook Facts, Ex. 27. But more importantly, in her response to Thornbrook's LR 56.1 statement, Roberts admitted the following assertion:

> 78.    At the time Roberts, P.C. executed the Trust Protector Contract, Roberts, as representative of Roberts, P.C., understood that it was agreeing to perform the duties of the trust protector as set forth in Section 5 of the Trust Agreement. (Roberts Adm. at ¶ 11; Roberts Dep. at pp. 127:3-8; 137:1-6).

Thornbrook Facts ¶ 78; Roberts Resp. ¶ 78. As reflected in Thornbrook's LR 56.1 statement, Roberts likewise admitted this proposition in her responses to Thornbrook's requests to admit facts served pursuant to Fed. R. Civ. P. 36. Thornbrook Facts, Ex. 7, ¶ 11. These admissions are sufficient to establish that Roberts was subject to the obligations set forth in the trust agreement.

Roberts contends, however, that her obligations under both the trust agreement and the

trust protector contract are limited to what is described in her April 24, 2001 letter to Rivercross. Neither side has elucidated this issue particularly well. Roberts argues that as a third party beneficiary of the trust protector contract, Thornbrook can have no greater rights than those of the party through which it claims, in this case Rivercross. This is certainly true as a general principle of contract law. *See, e.g., Xinos v. Village of Oak Brook*, 298 Ill. App. 3d 520, 525, 698 N.E.2d 667, 670 (1998); *Kessler, Merci & Lochner, Inc. v. Pioneer Bank & Trust Co.*, 101 Ill. Ap. 3d 502, 508, 428 N.E.2d 608, 613 (1981). But there are two problems with Roberts' position. First, she has admitted that she was subject to the terms of the trust agreement, not just the trust protector contract. Thornbrook was a party to the trust agreement, not a third party beneficiary. Second, Roberts essentially takes it as a given that the April 2001 letter limits her obligations under the later-executed trust agreement and trust protector contract. It is not quite that simple. In interpreting a written contract, a court may not consider evidence of a prior agreement that contradicts the latter written contract. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003) (Illinois law; citing *Bowers Mfg. Co. v. Chicago Mach. & Tool Co.*, 117 Ill. App. 3d 226, 230, 453 N.E.2d 61, 64-65 (1983)); *Rybicki v. Anesthesia & Analgesia Assoc., Ltd.*, 246 Ill. App. 3d 290, 299, 615 N.E.2d 1236, 1243 (1993). Further, the trust agreement contains a provision that it is "a stand-alone document that supersedes all prior understandings, whether written or oral." Thornbrook Ex. 5, ¶ 8.4. The only exception to the rule barring consideration of prior agreements or understandings is for ambiguous contracts. *Cromeens*, 349 F.3d at 394 (citing *Pioneer Trust & Sav. Bank v. Lucky Stores, Inc.*, 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152, 1154 (1980)); *see also, Rybicki*, 246 Ill. App. 3d at 299-300, 615 N.E.2d 1243; *Meyer*, 273 Ill. App. 3d at 888-89, 652 N.E.2d at 1238. In

short, a finding that the trust agreement and/or the trust protector contract is ambiguous is a necessary predicate to consideration of the April 24, 2001 letter.

Neither party has addressed whether the trust agreement and the trust protector contract are ambiguous. As indicated, Roberts sidesteps the issue, taking it as a given not only that the April 24, 2001 letter may be considered, but that it is binding on all parties. For its part, Thornbrook takes the position that the paragraph 5.4(A) of the trust agreement makes Roberts a guarantor of Rivercross's performance, and from this it argues that as guarantor, Roberts' unilateral understanding of her obligations is of no consequence. But Thornbrook does little to persuade the Court that trust agreement ¶ 5.4(A) in fact is a contract of guaranty.

We deal that question first. Paragraph 5.4 states that the trust protector's obligations include the duty to "[e]nsure Trustee complies with trust provisions." Thornbrook argues this makes Roberts a guarantor of Rivercross's performance. As Thornbrook points out, no particular form of language is needed to create a guaranty. *McCracken v. Olson Cos.*, 149 Ill. App. 3d 104, 112, 500 N.E.2d 487, 493 (1986). But the issue is whether this particular language does so. The definition of a guaranty is "a third party's promise to answer for payment of an obligation if the person primarily liable fails to make payment or perform the obligation." *Id.* Though that is certainly one plausible interpretation of ¶ 5.4(A), it is not the only reasonable interpretation. Another is the one that Roberts appears to advance – in view of the fact the trust protector is required to be an attorney, her obligation under the "ensure Trustee complies" provision is to render advice to the trustee in order to "ensure" the trustee meets its obligations, not to stand in the trustee's shoes if it fails to perform. Both interpretations are reasonable constructions of the trust agreement's language. In other words, the agreement is ambiguous. *See, Cromeens,* 349

20

F.3d at 394 (citing *Althoff Indus., Inc. v. Elgin Med. Ctr., Inc.,* 95 Ill. App. 3d 517, 520-21, 420 N.E.2d 800, 803 (1981)); *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1022, 1036 (7th Cir. 1998) (Illinois law; citing *Flora Bank & Trust Co. v. Czyzewski,* 222 Ill. App. 3d 382, 388, 583 N.E.2d 720, 725 (1991)).

We move on to the trust protector contract. Thornbrook appears to contend this contract imposes obligations in addition to those imposed by the trust agreement; Roberts appears to contend the trust protector contract defines the outer bounds of her obligations under the trust agreement. Again, neither side has elucidated the issue particularly well, and it is not clear which of them is right. When contracting parties intend that two instruments be executed as part of a single transaction and taken as a single agreement, they will be given effect as such. *See Fitzpatrick v. Allied Contracting Co.,* 24 Ill. 2d 448, 452, 182 N.E.2d 183, 186 (1962). This appears to be the case with the trust agreement and the trust protector contract. In interpreting a contract, a court must give meaning and effect to every term so that no part is rendered meaningless or surplusage unless absolutely necessary. *See, e.g., Cress v. Recreation Services, Inc.,* 341 Ill. App. 3d 149, 187, 795 N.E.2d 817, 852 (2003); *Bank of America Nat'l Trust & Sav. Ass'n v. Schulson,* 305 Ill. App. 3d 941, 950, 714 N.E.2d 20, 27 (1999). The trust protector contract is arguably more specific, at least in certain respects, than paragraph 5.4(A) of the trust agreement, but specific clauses do not always trump general clauses, at least not when they can be read as consistent. *Bank of America,* 305 Ill. Ap. 3d at 950, 714 N.E.2d at 27.

The trust protector contract's specific provisions (subparagraphs 1, 2 and 3 – subparagraph 4 is just a cancellation clause) require Roberts to render legal counsel to Rivercross and describe what Roberts must do to keep up to speed about trust law requirements. Roberts

reads this as describing the entirety of what she must do to "ensure [the] Trustee complies" with the trust agreement. This is a plausible reading. But ¶ 5.4(A) of the trust agreement does not just require the trust protector to ensure the trustee complies with the provisions of the trust. It requires, in addition, that the trust protector to "answer ... all [the] Trustee's questions regarding the interpretation and execution" of the trust. Thornbrook Facts, Ex. 5, ¶ 5.4(A). It is certainly plausible to read the trust protector contract as providing detail only for the requirement to answer the trustee's questions, rather than as defining or limiting the separate obligation to "ensure [the] Trustee complies" with the trust agreement. The agreement is ambiguous, making its construction a question of fact, one the Court cannot resolve on the present motions.

Thornbrook argues that either way, Roberts is in breach of the trust protector contract, for she failed to "protect the integrity of the trust document and the relationships established thereunder," another obligation that contract imposes. The requirement to protect the integrity of the trust document is simple enough to understand; it would appear to require Roberts to safeguard the original executed version of the trust agreement. There is no suggestion that Roberts failed to perform that obligation. But the obligation to protect the integrity of the relationships established under the trust agreement is a model of ambiguity, and we are hard pressed to determine its meaning without considering other evidence.

Because the provisions of both the trust agreement and the trust protector contract on which Thornbrook relies for its claim of breach against Roberts are ambiguous, the proper construction of the contracts' terms is a question of fact, and extrinsic evidence may be considered to determine the parties' intent. *See, e.g., Houben v. Telular Corp.,* 231 F.3d 1066, 1071 (7th Cir. 2000) (Illinois law; citing *Rossetto v. Pabst Brewing Co.,* 217 F.3d 539, 542 (7th

22

Cir. 2000) and *C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.,* 306 Ill. App. 3d 1015, 1020, 715 N.E.2d 778, 782 (1999)). If, after considering the evidence, doubt still remains as to the contract's meaning, then the question of interpretation is reserved to the trier of fact. *Bourke,* 159 F.3d at 1037 (citing *Countryman v. Indus. Comm'n,* 292 Ill. App. 3d 738, 741, 686 N.E.2d 61, 64 (1997)).

In this regard, Roberts' April 24, 2001 letter may express her intent, and it may be claimed to express the intent of Rivercross. It is anything but clear, however, that the letter should be determinative of the meaning of the trust agreement in view of the fact that there is no evidence that Thornbrook, one of the parties to the trust agreement to which Roberts is admittedly bound, was made aware of the letter's limitations. Under the circumstances, the Court does not believe that the construction of Roberts' duties under the "ensure Trustee complies" provision of the trust agreement or the "protect the integrity" clause of the trust protector contract can properly be determined as a matter of law, at least not based on the summary judgment motions that Thornbrook and Roberts have filed.

The last of the three basic questions the Court identified at the outset of this discussion involves the letter of understanding between Thornbrook and Rivercross. There is no evidence Roberts was aware of this document, which was executed about a month after the trust agreement and trust protector contract. Thornbrook does not challenge Roberts' argument that she cannot be held liable for breaches of the letter of understanding, so it is deemed to have conceded the point.

Thornbrook has one more arrow in its scabbard on the issue of liability. It contends that even if Roberts' obligations are limited by her April 24, 2001 letter to Rivercross, she still is in

breach, as she failed to utilize the processes that letter established for ensuring the trustee's

compliance with its obligations and protecting the "integrity" of the trust relationships. It is

undisputed that Roberts did not exercise her authority to contact the principals to Rivercross's

investment transactions, did nothing when she did not receive quarterly reports from Rivercross

as it had agreed, and did not request an audit as she had the authority to do. *See* Thornbrook

Summ. Judg. Mem. at 13-14. Roberts' answer is that the April 2001 letter absolves her from

responsibility for investment transactions or bank accounts that were not disclosed to her, and as

noted above it is undisputed that the investment described by the letter of understanding was not

disclosed to Roberts. But this does not foreclose the claim that Roberts failed "to ensure the

trustees' compliance with the terms of the trust," *see* Thornbrook Facts, Ex. 27 (April 24, 2001

letter), by excusing Rivercross from submitting the written reports required by the April letter,

and that this breach caused damage to Thornbrook. Under the circumstances, neither party

would be entitled to summary judgment even were it to be determined that Roberts' obligations

do not extend beyond those described in the April letter.[5]

In her motion for summary judgment, Roberts also argues that expert testimony is

required to establish Thornbrook's claims against her and that she is entitled to summary

judgment because Thornbrook has offered no such testimony. Roberts derives her argument

---

[5] The Court also notes that Roberts appears to contend she is excused from compliance with the trust agreement and the other related documents on the ground that Thornbrook misrepresented in the agreement that it was the owner of the funds being deposited in the trust. In fact some of the funds were from joint venture partners. It is difficult to see how this representation, if false, could be considered material; what difference could it possibly make to Roberts whether the trust she was supposed to "protect" was made up just of Thornbrook's funds? We need not, however, deal with the question, as it is not addressed in the parties' summary judgment papers. This serves as an additional reason why Thornbrook is not entitled to summary judgment; its claim is subject to a defense that it has not negated in its motion.

from Illinois' rule that in legal malpractice actions, expert testimony is required to establish the standard of care against which the attorney's conduct is measured. *See Barth v. Reagan,* 139 Ill. 2d 399, 564 N.E.2d 1196 (1990). The short answer is that this is not a legal malpractice action, and Roberts has cited no Illinois authority applying the rule of *Barth* to actions for breach of written contracts that involve lawyers. It is true that the trust agreement required the trust protector to be a lawyer, and as noted earlier that agreement and the trust protector contract impose on Roberts, among other obligations, the duty to render legal advice to Rivercross. Roberts might have a point if the claim of breach involved the giving of faulty or improper legal advice to the trustee, but that is not what the claim involves. Rather, it is based on Thornbrook's contention that the "ensure Trustee complies" clause makes Roberts a guarantor of Rivercross's performance; that she withheld information from Thornbrook in violation of her obligations to serve as mediator and her duty to "protect the integrity" of the trust relationship; and that, assuming the April 2001 letter governs Roberts' conduct, she failed to follow the procedures that letter established. *See* Thornbrook Summ. Judg. Mem. at 10, 12-15; Thornbrook Summ. Judg. Resp. at 7, 8-9, 11. In such a case there is no need to require an expert to define the standard of care that applies to lawyers (a relatively vague "reasonableness" standard in the legal malpractice context), as the standard is provided by the applicable written contracts. The Court therefore rejects Roberts' argument.

Roberts also seeks to limit or eliminate Thornbrook's claim for consequential damages in the event she is found liable. Thornbrook seeks to recover for expenses and liabilities it incurred in lawsuits filed by two of its joint venture partners arising from its inability to return their funds; consulting fees paid to certain of Thornbrook's principals for work they said they performed to

25

attempt to mitigate Thornbrook's losses; damage to its reputation and for lost prospective clients; and amounts it claims it could have earned on the trust funds in other investments had the funds been timely returned.

Roberts says she believed, based on the representation in ¶ 3.4 of the trust agreement, that the trust property was "earned by [Thornbrook] in the conduct of his own business." Thornbrook Facts, Ex. 5, ¶ 3.4. Thornbrook has no evidence to the contrary; it says Rivercross knew some of the funds came from Thornbrook's joint venture partners, but there is no evidence Roberts was made aware of this before she signed the trust protector contract. Based on this, Roberts argues that Thornbrook cannot recover from her for the losses it suffered due to litigation initiated by its joint venture partners who provided a portion of the trust funds. Illinois requires consequential damages in breach of contract cases to be "reasonably foreseeable," not that the particular element of damage have been "expressly contemplated" by the parties. *Linc Equip. Svcs., Inc. v. Signal Med. Svcs., Inc.,* 319 F.3d 288, 289 (7th Cir. 2003) (Illinois law); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.,* 118 Ill. 2d 306, 318, 515 N.E.2d 61, 67 (1987) (rule of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854) governs award of consequential damages in breach of contract actions). But in view of Thornbrook's express representation in the trust agreement and Roberts' lack of awareness of the true sources of the funds, no reasonable jury could find that damages from litigation by Thornbrook's joint venture partners were foreseeable to her. The same is true of Thornbrook's claim for damages resulting from its alleged loss of reputation and business opportunities vis-a-vis its joint venture partners. Thornbrook is not entitled to recover these elements of damages from Roberts.

Thornbrook also alleges that in an effort to reduce its damages, it incurred consulting

26

expenses to Thornbrook International Consultants, Inc., an affiliated entity. But the testimony of Gordon Steele, Thornbrook's vice president of finance, makes it clear that even if Thornbrook truly incurred an increased expense (which is questionable), it did so in order to try to mollify the joint venture partners. *See* Thornbrook Resp., Ex. B (Steele Dep. 2/17/04) at 82-83. This expense was not reasonably foreseeable to Roberts for the reasons previously described.

The Court reaches a different conclusion regarding Thornbrook's final element of consequential damages, the profits it says it lost because it did not have the trust property available to use in other investments. Lost opportunity damages are a common and proper element of damages in breach of contract cases. *See, e.g., Cole Energy Devel. Co. v. Ingersoll Rand Co.*, 913 F.2d 1194, 1202 (7th Cir. 1990) (Illinois law). Indeed, it is questionable whether the loss of income that could have been earned on the assets that Thornbrook did not have due to the alleged breach "should be classified as 'consequential' damages at all," as "[i]t fits nicely within standard measures of damages in contract cases." *Linc Equip.*, 319 F.3d at 290. It will up to the fact finder to determine whether the particular lost opportunity damages claimed by Thornbrook are recoverable.

In its response to Roberts' summary judgment motion, Thornbrook moved to strike various statements of fact Roberts made, arguing that she had attempted to selectively waive the attorney-client privilege for her own ends while claiming other matters are subject to the privilege. The Court has not considered any of the disputed matters in ruling on the present motions and thus denies as moot Thornbrook's motion to strike. The Court recognizes the issue may again become relevant as trial approaches; if so, it should be raised in a motion *in limine* pursuant to a schedule that the Court will set.

27

## Conclusion

For the reasons stated above, plaintiff's motion for summary judgment [docket # 89-1] and defendant Roberts' motion for summary judgment are both granted in part and denied in part. Summary judgment is granted in favor of plaintiff and against defendant Rivercross as to liability on Counts 1 and 3 of the complaint, and for partial damages of $2,985,000 against Rivercross on those claims. Thornbrook's motion is otherwise denied. Roberts' motion for summary judgment is granted in part with regard to plaintiff's requests for damages as detailed in this Memorandum Opinion but is otherwise denied. Thornbrook's motion to strike is denied as moot.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   July 6, 2004